[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTIONS TO STRIKE
On December 2, 1994, the plaintiffs, Alan and Marjorie Warner ("plaintiffs") filed a seven count amended complaint against the' defendants, Kedah Corporation ("Kedah"), Cryodyne Technologies, Inc., n/k/a Winthrop Technologies, Inc. ("Winthrop"), and IPC Contel Corporation ("Contel"). Therein, the plaintiffs allege that the defendants' actions caused the plaintiffs' well water to become contaminated, resulting in personal injuries to the plaintiffs, as well as damage to their property.
Counts one through three allege claims of nuisance, trespass, and negligence, respectively, against Kedah and Winthrop, while count four alleges a claim of negligence against Contel. Count five alleges a claim of reckless misconduct against Kedah and Winthrop, while count six alleges a claim of reckless misconduct against Contel. Count seven allegedly sets forth a claim for reimbursement for containment or removal costs, pursuant to General Statutes § 22a-452, against all three of the defendants.
The plaintiff's prayer for relief seeks, inter alia: punitive damages on counts five and six, and reasonable attorney's fees on count seven.
On December 16, 1994, Contel filed a motion to strike count CT Page 11010 seven of the plaintiffs' amended complaint, and a memorandum of law in support thereof. In response, the plaintiffs filed a memorandum of law in opposition on January 23, 1995.
On March 29, 1995, Kedah and Winthrop filed a motion to strike counts one, five, and seven of the plaintiff's amended complaint, as well as the plaintiff's second and third prayers for relief, and ¶ 14 of the first, second, third, and fifth counts of the plaintiff's amended complaint. Additionally, Kedah and Winthrop, on this same date, filed a memorandum of law in support thereof. On May 25, 1995, the plaintiffs filed a memorandum of law in opposition thereto.
On May 11, 1995, Contel filed an amended motion to strike, seeking to strike ¶ 17 of count four, ¶ 14 of count six, count six in its entirety, and the second and third prayers for relief, as well as count seven. Additionally, Contel filed a memorandum of law, incorporating therein the arguments set forth in Kedah and Winthrop's memorandum of law in support of their motion to strike. In response, on May 15, 1995, the plaintiffs filed a memorandum of law in opposition.
Finally, on June 22, 1995, Kedah and Winthrop filed a supplemental memorandum of law in support of their motion to strike.
DISCUSSION
Pursuant to Practice Book § 152, a motion to strike may be brought to test the legal sufficiency of a complaint or any of its counts. See Pratt v. Old Saybrook, 225 Conn. 177, 185,621 A.2d 1322 (1993). In ruling on a motion to strike, the court must construe the facts in the complaint most favorably to the plaintiff. Novametrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 215, 618 A.2d 25 (1992). This includes the facts necessarily implied and fairly provable under the allegations but does not include, however, the legal conclusions or opinions stated in the complaint. Westport Bank Trust Co. v. Corcoran, Mallin Aresco, 221 Conn. 490, 495, 605 A.2d 862 (1992). "If any facts provable under the express and implied allegations in the plaintiff's complaint support a cause of action . . . the complaint is not vulnerable to a motion to strike." (Citations omitted.)Bouchard v. People's Bank, 219 Conn. 465, 471, 594 A.2d 1 (1991).
Generally, a motion to strike must be directed to the legal CT Page 11011 sufficiency of an entire complaint, count or counterclaim. One or more paragraphs of a complaint or count, however, may be attacked if a separate cause of action is attempted to be stated therein.Donovan v. Davis, 85 Conn. 394, 397, 82 A. 1025 (1912). See alsoBourquin v. Melsungen, 2 Conn. L. Rptr. 372, 373 (September 4, 1990, Miano, J.); Ahsan v. Olsen, 3 CSCR 55, 55 (November 9, 1987, Wagner, J.); Depray v. St. Francis Hospital, 2 CSCR 691, 691 (June 9, 1987, Dorsey, J.).
Count One
Kedah and Winthrop argue that count one of the plaintiffs' amended complaint should be stricken, on the ground that said count lacks essential factual allegations which must be plead and proven in order to set forth a legally sufficient claim of nuisance. In response, the plaintiffs argue that, construing the count in the light most favorable to them, they have set forth a legally sufficient claim of nuisance, because they have alleged that the plume of contamination emanating from the defendants' property is hazardous to the plaintiffs' health, and that this hazardous condition is unreasonable and unlawful.
A nuisance describes an inherently dangerous condition that has a natural tendency to inflict injury upon persons or property.Quinnett v. Newman, 213 Conn. 343, 348, 568 A.2d 786 (1990). "The term nuisance refers to the condition that exists and not to the act or failure to act that creates it." Id. In order to prevail on a claim of nuisance, the plaintiff must establish that:
 (1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the [plaintiff's] injuries and damages.
Tomasso Bros., Inc. v. October Twenty-Four, Inc., 221 Conn. 194,197, 602 A.2d 1011 (1992); Heritage Village Master Assn., Inc. v.Heritage Village Water Co., 30 Conn. App. 693, 708, 622 A.2d 578
(1993).
In the present case, count one of the plaintiffs' amended complaint alleges, in pertinent part, as follows:
7. On or about July 25, 1991, the Plaintiffs were CT Page 11012 notified by the State of Connecticut Department of Environmental Protection ("DEP") that their well-water was contaminated by "hazardous substances" identified as numerous chlorinated hydrocarbon compounds . . . .
 10. Upon information and belief, the DEP has determined that some or all of the "hazardous substances" found in the Plaintiffs' well-water have been found in a septic system on the Defendants' property including in and around the septic tank and leaching fields and the surrounding soil and in an inactive dug well located within the building of Cryodyne's facility.
 11. Upon information and belief the DEP subsequently determined that a plume of groundwater contamination including some or all of the hazardous substances found in the Plaintiffs' well-water, is emanating from the Defendants' property and spreading to and entering upon the Plaintiffs' property thereby contaminating the Plaintiffs' well-water.
 12. The contamination of the Plaintiffs' well-water by the plume of groundwater contamination constitutes a continuing nuisance in that it interferes with the Plaintiffs' enjoyment and use of their property in an unreasonable and/or unlawful manner.
It is true, as the plaintiffs point out, that our Supreme Court has recognized that one may be held liable for polluting underground water, regardless of whether the person causing the same had been negligent in the use of his property. Swift Co. v.Peoples Coal Oil Co., 121 Conn. 579, 588-89, 186 A.2d 629 (1936): "A nuisance may grow out of negligence . . . but it may exist wherethe use a person is making of his property is not in any respect negligent but nevertheless results in damage to his neighbor."
(Emphasis added; citations omitted.) Id.
However, it is equally true, as the defendants point out, that, although the plaintiffs have averred the existence of certain contaminants in the septic system and dug well on the defendants' property and in their well-water, and have further alleged that "a plume of groundwater contamination . . . [is] emanating from the defendants' property . . .", the plaintiffs have failed to relate one allegation to the other. That is, the plaintiffs have failed to establish that a nexus exists between the contaminants on the CT Page 11013 defendants' property, and the plume emanating therefrom, because they have not alleged that the plume emanating from the defendants' property is a result of releases in the defendants' septic system or the dug well, or from some other source.
Accordingly, the court agrees with the defendants that the plaintiffs have failed to allege a legally sufficient claim of nuisance, and the defendants' motion to strike count one of the plaintiffs' amended complaint is hereby granted.
Counts Five Six
Kedah and Winthrop argue that count five, and Contel argues that count six, should be stricken, on the ground that said counts, which purportedly set forth claims of reckless misconduct, fail to allege facts sufficient to demonstrate that the defendants acted in a wanton, reckless and willful manner. In this regard, the defendants contend that ¶ 12 of count five is virtually identical to ¶ 12(c) of count three, the plaintiffs' negligence count, together with the conclusory statement that such negligence amounts to "wanton, reckless and willful misconduct." The minor differences between the two paragraphs, the defendants argue, are not enough to transform what is essentially a negligence claim into a claim of reckless misconduct. Further, the defendants argue that, in the event that these counts are stricken, the plaintiffs' second prayer for relief, seeking punitive damages based upon counts five and six, should also be stricken.
In response, the plaintiffs argue that counts five and six of their amended complaint should not be stricken because said counts allege that, despite knowing that there was a likelihood of injury to the plaintiffs, the defendants made a conscious choice to allow the contamination to continue. As such, the plaintiffs argue, they have set forth a legally sufficient claim of reckless misconduct.
In Connecticut, reckless and wanton misconduct and negligence are separate and distinct causes of action, each of which has its own unique set of essential elements. Foxworth v. Juliano,
Superior Court, judicial district of Hartford-New Britain, at Hartford, D.N. 524237 (November 4, 1993, Sheldon, J.), citingBordonaro v. Senk, 109 Conn. 428, 431-32, 147 A. 136 (1929). See also Warner v. Leslie-Elliot Constructors, Inc., 194 Conn. 129,138, 479 A.2d 231 (1984) (causes of action for negligence and willful or malicious conduct" are separate and distinct causes of action). CT Page 11014
 Negligence involves the failure of the actor to exercise the degree of care which a reasonably prudent person would have exercised under similar circumstances. Typically the result of thoughtlessness, inadvertence or an error in judgment, negligence does not require proof that the actor was aware of the likely consequences of his acts, but only that a reasonable person in his position would have been aware of them and attempted to avoid them.
Foxworth v. Juliano, supra. Recklessness, by contrast:
 is a state of consciousness with reference to the consequences of one's acts. It requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent.
(Citations omitted; internal quotation marks omitted.) Sheiman v.Lafayette Bank Trust Co., 4 Conn. App. 39, 45, 492 A.2d 219
(1985). "`Wilful,' `wanton,' or `reckless' conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent"; . . . thus, "such aggravated negligence must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention . . . ." (Citations omitted.)Dubay v. Irish, 207 Conn. 518, 533, 542 A.2d 711 (1988). Reckless and wanton misconduct is, therefore, more than negligence and more than gross negligence. Id., 532.
In light of the above, "[a] plaintiff cannot transform a negligence count into a count for wilful and wanton misconduct merely by appending a string of adjectives to allegations that clearly sound in negligence." (Citations omitted.) Brown v.Branford, 12 Conn. App. 106, 110, 529 A.2d 743 (1987). Thus, a complaint purporting to state a cause of action for reckless and wanton misconduct "should employ language explicit enough to clearly inform the court and opposing counsel that reckless misconduct is relied on." Brock v. Waldron, 127 Conn. 79, 81,14 A.2d 713 (1940). CT Page 11015
In the present case, counts five and six of the plaintiffs' amended complaint allege, in pertinent part, only that the contamination of the plaintiffs' well-water was caused by the wanton, reckless and willful misconduct of the defendants in that they:
 substantially aggravated and exacerbated negligent conduct by failing or refusing to investigate and remediate spills and/or discharges of hazardous substances at 67 Winthrop Road in reckless disregard of the just rights and/or safety of the Plaintiffs and other neighbors who the Defendants knew or in the exercise of reasonable care ought to have known were likely to actively consume, use and handle well-water contaminated by said hazardous substances.
Amended Complaint, ¶ 12 of Counts Five and Six. This paragraph is virtually identical to ¶ 12(c) of count three, which alleges that the defendants were negligent:
 [i]n that it/they failed to remedy and remediate the contamination emanating from 67 Winthrop Road [the defendants' business] when it/they knew or should have known that said substances are or are likely to be hazardous to persons living on neighboring properties including the Plaintiffs' [sic].
Amended Complaint, ¶ 12(c) of Count Three.
Moreover, nowhere in their recklessness counts do the plaintiffs specifically set forth factual allegations to support their claim that the defendants knew, or had sufficient facts before them to know, that their actions involved "a serious danger to others," and that, despite knowledge of this substantial risk, nonetheless proceeded to make a conscious choice to disregard said risk. See, e.g., Oink, Inc. v. Ann Street Limited Partnership,12 Conn. L. Rptr. 547, 548-50 (October 19, 1994, Corradino, J.) (granting defendant's motion to strike where the plaintiffs' complaint failed to allege particular facts or a course of conduct to support their allegation that the defendant acted recklessly or with an actual intention to violate the law, because "[t]he fact that there may have been discharge of waste and that statutes may have been violated does not make the purported wrongdoer a reckless or intentional actor relative to the dangers presented by his or CT Page 11016 her activities"); Palmisano v. Caldor, Inc., Superior Court, judicial district of Hartford-New Britain, at Hartford, D.N. 443365 (November 5, 1993, Berger, J.) (granting defendant's motion to strike where the only allegations in the plaintiff's recklessness count, that were not contained in his negligence count, were that the defendant had knowledge of the potential for injury to others, and that the alleged negligent acts of the defendant were also' willful).
Accordingly, the defendants' motions to strike counts five and six of the plaintiffs' amended complaint must be, and are, hereby granted. Additionally, in light of the fact that the plaintiffs concede that the reckless misconduct claim is the only one upon which they may recover punitive damages from the defendants; Amended Complaint, Prayer for Relief, ¶ 2; and in light of the fact that it is axiomatic that the pleadings must allege recklessness for there to be a basis for the recovery of punitive damages;Markey v. Santangelo, 195 Conn. 76, 77, 485 A.2d 1305 (1985); the defendants' motions to strike the plaintiffs' second prayer for relief, seeking punitive damages, are granted as well. Varlese v.Beers, 3 Conn. L. Rptr. 474, 474 (April 4, 1991, Sullivan, J.) (granting motion to strike prayer for relief for double or treble damages because the plaintiff failed to allege specific facts to support a claim of reckless disregard).
Count Seven
Kedah, Winthrop, and Contel argue that count seven, which seeks reimbursement pursuant to General Statutes § 22a-452, should be stricken, on the ground that said count fails to allege that the plaintiffs expended money to contain, remove or otherwise mitigate the effects of the alleged contamination, and, fails to allege that the defendants engaged in culpable conduct. Further, the defendants argue that, in the event that said count is stricken, the plaintiffs' third prayer for relief, seeking reasonable attorney's fees based upon count seven, should also be stricken.
In response, the plaintiffs argue that, reading count seven as a whole, it is reasonable to infer that the plaintiffs have incurred costs of mitigation because they still live at the subject property and obviously need potable water to live. As far as culpable conduct is concerned, the plaintiffs argue, they have alleged culpability by virtue of the defendants' failure to clean up the contamination. CT Page 11017
General Statutes § 22a-452 (a) provides, in pertinent part, that:
 Any person, firm, corporation or municipality which contains or removes or otherwise mitigates the effects of oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes resulting from any discharge, spillage, uncontrolled loss, seepage or filtration of such substance or material or waste shall be entitled to reimbursement from any person, firm or corporation for the reasonable costs expended for such containment, removal, or mitigation, if such oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes pollution or contamination or other emergency resulted from the negligence or other actions of such person, firm or corporation.
Thus, by its very terms, General Statutes § 22a-452 (a) allows reimbursement of remediation costs only if a plaintiff has contained, removed or otherwise mitigated contamination. See alsoBristol Shopping Plaza v. Vigilante Cleaners, Superior Court, judicial district of Hartford-New Britain, at Hartford, Docket No. 338958 (December 1, 1989, Ripley, J.) (General Statutes § 22a-452
"was intended to apply to cost of contamination and to removal of pollutants and not to actions for damages which may or may not be expended for cleanup purposes"); Connecticut Light Power Co. v.Knight, Superior Court, judicial district of Windham at Putnam, Docket No. 33646 (July 23, 1993, Potter, J.) (as a "precondition" to recovery under General Statutes § 22a-452, the language of the statutes "specifically requires that the party seeking reimbursement undertake some action to `[contain], [remove] or otherwise [mitigate] the effects' of any contamination in order to recover the reasonable costs expended in cleanup efforts").
Moreover, it has also been recognized that a legally sufficient claim under General Statutes § 22a-452 (a) must contain an allegation that the contamination was caused by the defendants' culpable conduct:
 Section 22a-452 (a) provides for reimbursement for contaminant removal costs only where the pollution or contamination resulted from the negligence or other actions of such person, firm or corporation. . . . This section permits the injured property owner to abate the contamination and to seek reimbursement from the CT Page 11018 generator of the contamination.
(Emphasis added.) Connecticut Resources Recovery Authority v.Refuse Gardens, Inc., 43 Conn. Sup. 83, 87-88, 642 A.2d 762 (1993), aff'd, 229 Conn. 455, 642 A.2d 697 (1994). Thus, "culpability and not merely causation" . . . "is an element of § 22a-452 (a)." Id.,
In the present case, count seven of the plaintiffs' amended complaint alleges, in pertinent part, only that:
 14. The Defendants, as owners, occupiers or previous owners or occupiers of 67 Winthrop Road and by virtue of their failure to clean up the contamination, are jointly and severally liable to the Plaintiffs, pursuant to Connecticut General Statutes § 22a-452 for all costs to contain, remove or otherwise mitigate the effects of the contamination of their well-water.
Nowhere in count seven do the plaintiffs allege that they have, taken action to remediate the alleged contamination, that they have expended funds for such remediation, and that the contamination resulted from the defendants' culpable conduct. Accordingly, the defendants' motions to strike count seven of the plaintiffs' amended complaint must be, and are, hereby granted.
Further, in light of the fact that count seven has been stricken, the defendants' motions to strike that portion of the plaintiffs' third prayer for relief, seeking reasonable attorney's fees based on count seven, are also granted.
 Paragraph 14 of Counts One, Two, Three, Five, Six Paragraph 17 of Count Four:
Kedah and Winthrop argue that ¶ 14 of counts one, two, three, and five, claiming emotional distress, should be stricken because, since the infliction of emotional distress is a separate tort, it must be stated in a separate count, accompanied by the allegation of sufficient facts to support each of the tort's essential elements. For these same reasons, Contel argues that ¶ 14 of count six, and ¶ 17 of count four, must also be stricken.
In response, the plaintiffs argue that emotional distress is a proper element of the damages they have suffered as a result of each cause of action alleged. It follows, the plaintiffs argue, that they may properly plead damages for emotional distress in each CT Page 11019 of the counts of their complaint.
In the present case, § 14 of counts one, two, three, five, and six, and ¶ 17 of count four, of the plaintiffs' amended complaint allege, in pertinent part, that:
 [a]s a further result of the Defendants' [actions] . . ., the Plaintiffs have suffered fear and anxiety for the health, safety and well-being of themselves and their two minor children and they are at risk in the future to suffer serious health problems as a result of their exposure to the well-water contamination.[1]
As noted earlier, however, a party may not properly move to strike a paragraph of a complaint, unless said paragraph states a separate cause of action. Donovan v. Davis, supra, 85 Conn. 397;Bourguin v. Melsungen, supra, 2 Conn. L. Rptr. 373; Ahsan v. Olsen,
supra, 3 CSCR 55; Depray v. St. Francis Hospital, supra,2 CSCR 691.
Here, as in Texixeira v. Scranton Motors, Inc., Superior Court, judicial district of Tolland at Rockville, Docket No. 40558 (September 13, 1990, Spada, J.), the subject "paragraph does not state a separate cause of action, but seeks damages . . . ."
Accordingly, the defendants' motions to strike ¶ 14 of counts one, two, three, five and six, and ¶ 17 of count four, of the plaintiffs' amended complaint, are hereby denied.
BY THE COURT,
STANLEY, J.